Circuit Court of Cuyahoga County.

CARRIE M. HARMS, ALIAS CARRIE M. MCLAUGHLIN, v. STATE
OF OHIO.

Decided, June 4, 1906.

*Bigamy—Criminal Intent—Burden of Proof.*

1. Where the first spouse of one accused of bigamy had been continually absent for five successive years next before the second marriage, without being known to be living within that time, the defendant is not guilty of bigamy.
2. Where defendant relies upon the fact that the first spouse had been absent for more than five years next preceding her second marriage, without being known to be living, there is no burden upon her to show that she used due diligence to ascertain the whereabouts of her first husband.

*C. V. Robinson,* for plaintiff in error.
*S. V. McMahon,* contra.

WINCH, J.; HENRY, J., and LAUBIE, J., concur.

The plaintiff in error was convicted of bigamy and relies upon error in the charge of the trial judge to reverse the judgment.

Upon the trial of the case it was conceded that the first marriage was contracted on July 16, 1896, and the second on October 21, 1902, more than six years intervening, and it was shown that the first husband was still living, though he never lived with his wife.  The accused offered evidence tending to bring her within the exception of the statute (7018), which provides:

"This section does not extend to any person whose husband or wife has been continually absent for five successive years, next before such marriage without being known to such person to be living within that time.".

Counsel for the accused requested the court to charge that if the jury found that the first husband of the accused had been continually absent from her for five successive years next before second marriage, without being known to her to be living within that time, they should bring in a verdict of not guilty. This the court refused, but charged, in substance, that due diligence to ascertain the whereabouts of the first husband must be shown by the defendant before she can be said to come within the saving clause of the statute.

In so charging we think the court erred, and from the argument of the prosecuting attorney we are inclined to think he was lead into error by a misconception of the scope of. the opinion by Judge Jones, of the District Court of Cuyahoga County in the case of *State* v. *Stark*, reported in the tenth volume of the Weekly Law Bulletin, at page 16.   The second paragraph of the syllabus of that case reads as follows:

"It is competent for a defendant on trial to give evidence tending to show that at the time of the second marriage he in good faith believed and, after exercising due diligence, had reasonable ground for believing, that his first wife was either dead or divorced, and if he satisfies the jury of either of these things he is entitled to an acquittal."

A careful reading of the facts of the case and of Judge Jones' opinion shows that he was not considering the proviso or exception in the statute on bigamy, but confined himself to a refutation of the claim of the state that the doctrine of Massachusetts, set forth in the case of *Commonwealth* v. *Mast*, 7 Metcalf, 472, obtains in Ohio.   That case held that an honest belief on the part of the wife that the husband was dead, when she had made many inquiries about him, and when he had been gone several years, was no defense whatever to the charge of the bigamy.   Judge Jones says:

"This case admits the general doctrine that where there is no criminal intent there can be no guilt; but it proceeds to nullify this doctrine by saying that where a statute has made it criminal to do any act under any particular circumstances, the party voluntarily doing this act is chargeable with the criminal act of doing it."

He then proceeds, by a consideration of the Ohio cases to show that in this state honest error of fact, where there is good faith and due care, is an excuse for what would otherwise be a criminal act.

Now this, he says, is the general rule in Ohio, with regard to all crimes, and there is no exception with regard to bigamy. He makes no reference to the exception in the bigamy statute, nor could he, for Stank remarried within three years after his first wife left him. He gives the defense available at common law, to one accused of bigamy, and available though the second marriage may have been consummated within a few weeks or months after separation from the first consort.

The case of *Squier* v. *State*, 46 Ind., 459, cited by the prosecuting attorney, is like the Stank case. Squier had been absent from his first wife only two years when he married again.

Having in mind this common law defense, what did the Legislature intend when it added the exception to the bigamy statute which has been quoted? If it simply intended to affirm the common law rule, why did the Legislature say anything about absence for "five successive years" and say nothing about good faith and due diligence in ascertaining the whereabouts of the absent first husband or wife?

The only answer to these questions is, that the Legislature intended to and did leave the common law defense available during the first five years separation, but established a milder rule, more favorable to the accused, available after five years separation.

We think that under this statute the accused, having shown that the first husband was continually absent from her for five successive years next before her second marriage, is only required to show further that, in fact, during said five years it

was not known to her that her first husband was living during that time.

We realize that this makes it incumbent upon the accused to prove a negative, a very difficult thing to do, and for this reason the English cases simply require the accused to establish the separation for the statutory time, placing the burden upon the Crown of proving that the accused knew of the continuance of the marriage ties, but this rule we apprehend arises by reason of the English laws forbidding the accused to testify in his own behalf. See the case of the *Queen* v. *Curgerwen*, L. R., 1 Cr. Cas. Res., 1.

Should the accused in this state testify that she did not know that her first husband was living during the five successive years next before her second marriage, it would seem that, to test her credibility, she might be cross-examined as to her means of knowledge and the efforts she had made to find her husband, and the jury would then have to determine whether she was telling the truth. The state might also be able to show, from other sources, that she in fact was aware of her first husband's existence within the five years.

Complaint is also made that the court charged that the defendant must show that the first husband was the aggressor; in other words, that he left her, or that by his conduct she was justified in leaving him. There is warrant for this part of the charge in the words of the statute, for it reads: "whose husband * * * has been continually absent." If the wife left the husband without cause, she would be the absent one, not he. This view is sustained by the authorities.

Because by the charge the trial court placed a greater burden upon the accused than the statute provides, in the respect pointed out, the judgment is reversed and the cause remanded for a new trial.